UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

IKHTIER ISOEV,

Petitioner,

v.

CHRISTOPHER LAROSE; DANIEL BRIGHTMAN; TODD LYONS; KRISTI NOEM; PAMELA BONDI; U.S. DEPARTMENT OF HOMELAND SECURITY; and U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,

Respondents.

Case No.: 26-cv-1361-JES-DDL

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

**[ECF No. 1]**

Before the Court is Petitioner Ikhtier Isoev's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. Pursuant to the Court's Order to Show Cause (ECF No. 2), Respondents filed a return to the petition and Petitioner filed a traverse. ECF Nos. 4, 5. For the reasons set forth below, the Court **GRANTS** the Petition.

## I.     BACKGROUND

Petitioner is a citizen of Russia who fled to the United States due to persecution and in order to apply for asylum. ECF No. 1 ¶ 1. He entered the United States after making an appointment with Customs and Border Protection ("CBP") in Brownsville, Texas. *Id.* ¶ 2. On January 9, 2023, he was then admitted to the United States on Humanitarian Parole that

1

was valid for one year. *Id.* At that time, he was also given a Notice to Appear and placed into removal proceedings. *Id.* He later filed for asylum and was granted work authorization. *Id.*

Since his parole, in the last three years, Petitioner alleges that he has built a life in this country. He found a place to live and integrated into his community. *Id.* ¶ 3. He worked during this time, supporting himself financially. *Id.* Most recently, he has been working as a driver for Uber. *Id.* Petitioner alleges that during this time, he attended all his scheduled check-ins, interviews, and appointments. *Id.* ¶ 41.

On December 25, 2025, Petitioner accepted a ride to pick up a customer at the Camp Pendleton Marine Base in Oceanside, California. *Id.* ¶ 4. Upon arrival at the gate to enter the base, Petitioner alleges that he was stopped by the guard who asked for his ID and whether he had a green card. *Id.* When Petitioner answered no, the guard held him for two hours, until agents from Immigration and Customs Enforcement ("ICE") arrived. *Id.* Petitioner was then placed into their custody, and was taken for processing and transferred to Otay Mesa Detention Center, where he is currently being held. *Id.* Petitioner alleges that he was never presented with a warrant for this arrest, and did not receive any opportunity to be heard on his re-detainment. *Id.* ¶ 47.

Based on the foregoing facts, Petitioner brings the following claims for the manner in which he was re-detained: (1) violation of the Administrative Procedure Act ("APA"); (2) violation of due process; and (3) violation of the Fourth Amendment. *Id.* ¶¶ 52-72.

## II.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas

corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III.   DISCUSSION

In Respondents' return to the petition, they raise several issues: (1) Petitioner's claim is jurisdictionally barred by 8 U.S.C. § 1252; (2) alternatively, if not barred, Petitioner must exhaust administrative remedies; and (3) Petitioner is lawfully detained under § 1225. ECF No. 4.

### A.   Jurisdiction and Administrative Exhaustion

The arguments with regards to jurisdiction and administrative exhaustion are identical to those recently addressed by the undersigned in *Martinez Lopez v. Noem et al.*, No: 25-cv-2717-JES-AHG, 2025 WL 3030457, at *2-3 (S.D. Cal. Oct. 30, 2025). The Court adopts it reasoning as to these issues and incorporates it by reference. *See also Beltran et al. v. Noem et al.*, No. 25CV2650-LL-DEB, 2025 WL 3078837, at *3-4 (S.D. Cal. Nov. 4, 2025) (holding same).

Accordingly, the Court finds that the jurisdiction stripping provisions of 8 U.S.C. § 1252 do not strip it of jurisdiction to hear Petitioner's claims and that any further administrative exhaustion requirements are waived in light of *Matter of Yajure Hurtado*.

### B.   Detention Under § 1225

Respondents argue that Petitioner is detained pursuant to 8 U.S.C. § 1225's mandatory detention because Petitioner is "an applicant for admission" as contemplated under § 1225, and thus, his detention is proper and his requested relief is barred. ECF No. 5 at 5-6.

The issue presented in this case has been addressed by several district courts in this Circuit and across the nation. This court, along with many others, have overwhelmingly held that § 1225 does not apply to detentions that occur after the petitioner has been residing

in the United States for a period of time. *See Martinez Lopez*, 2025 WL 3030457, at *4-5 (explaining reasoning and citing cases); *Beltran*, 2025 WL 3078837, at *4-7 (same). The Court adopts its prior reasoning here.

Specifically, courts have applied this reasoning to a situation like Petitioner's—there is no dispute that he was paroled into the United States at the border on January 9, 2023, and has physically lived inside the United States since that date before he was re-detained. *See Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (holding § 1226 applies to petitioner who was paroled into the country on her own recognizance in June 2024 and re-detained in August 2025); *Sampiao v. Hyde*, No. 1:25-CV-11981-JEK, 2025 WL 2607924, at *8 (D. Mass. Sept. 9, 2025) (holding § 1226 applies to petitioner who was released at border on own recognizance in October 2021 and re-detained in July 2025); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *9 (S.D.N.Y. Aug. 13, 2025) (holding § 1226 applies to petitioner who was released at border on his own recognizance in May 2023 and re-detained in July 2025).

Accordingly, the Court holds that 8 U.S.C. § 1225 does not apply to Petitioner's detention and does not preclude a decision in his favor on the merits.

## C.   Due Process

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 679. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690. A person at risk of suffering a serious loss being given notice and an opportunity to be heard, in a meaningful manner and at a meaningful time, is the essence of procedural due process. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

4

Courts have identified various ways that a petitioner may be granted some form of parole. The choice is "discretionary and is made on a case-by-case basis." *J.S.H.M v. Wofford*, No. 1:25-CV-01309 JLT SKO, 2025 WL 2938808, at *6 (E.D. Cal. Oct. 16, 2025). It appears that here, Petitioner was granted humanitarian parole 8 U.S.C. § 1182(d)(5)(A). In the context of 8 U.S.C. § 1182(d)(5)(A), courts have held that such parole status entitles the petitioner to certain due process rights under both procedural due process and the Administrative Procedure Act ("APA"). *See Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1146 (D. Or. 2025) (finding violation under APA); *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 154 (W.D.N.Y. 2025) (finding violation under procedural due process where notice and opportunity to be heard were not given to a petitioner).

Further, courts have repeatedly held that liberty interests do not expire when parole does. "When he was released from his initial detention on parole, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025). Rejecting similar arguments from the government, the court held that "this private interest did not expire along with Petitioner's parole agreement. Once established, Petitioner's interest in liberty is a constitutional right which may only be revoked through methods that comport with due process." *Id.*; *see also Rodriguez Cabrera v. Mattos*, 808 F. Supp. 3d 1159, 1179 (D. Nev. 2025) ("Petitioner has a fundamental interest in freedom from physical confinement, and that liberty interest is particularly strong given his initial release from detention in 2022, and the fact that Respondents did not seek his return to custody upon the expiration of his parole in December 2022, or in the three years since."); *Omer G. G. v. Kaiser*, No. 1:25-CV-01471-KES-SAB (HC), 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025) ("[P]etitioner's liberty interest did not expire along with his parole.").

Here, Petitioner was granted parole after he entered and was processed in this country, creating a liberty interest protected by the Due Process clause. The liberty interest underlying that parole has not expired through any of the stages of his immigration case, including the automatic, time-based end of his parole. *See Ramirez Tesara*, 800 F. Supp.

26-cv-1361-JES-DDL

3d at 1136. The Court disagrees with Respondents that an expiration of parole automatically extinguishes any due process claim. *See Rodriguez Cabrera*, 808 F. Supp. 3d at 1179 ("That the express terms of Petitioner's parole allowed for discretionary termination or expiration does not somehow obviate the need for the government to provide an individualized hearing prior to re-detaining him given the significance of his liberty interest."); *Omer G. G,* 2025 WL 3254999 at *5. Further, these liberty interests are particularly "weighty" where Petitioner relies on the government's grant of release to take actions to build a life in this country—as Petitioner has done here. *Ramirez Tesara*, 800 F. Supp. 3d at 1136; *Rodriguez Cabrera*, 808 F. Supp. 3d at 1179 ("His interest in being free from confinement is particularly weighty, given his family and community ties within this country.").

As this Court explained in *Sanchez v. LaRose*, due process requires not only notice and opportunity to be heard, but also that the notice and opportunity be meaningful. No. 25-CV-2396-JES-MMP, 2025 WL 2770629 at *3 (S.D. Cal. Sept. 26, 2025). Petitioner alleges that he was arrested and re-detained without notice or opportunity to be heard regarding the loss of his liberty interest. Accordingly, the Court finds that Respondents violated Petitioner's due process rights when they re-detained him on December 25, 2025.

## IV.  CONCLUSION

For the reasons discussed above, the Court **GRANTS** Petitioner's writ of habeas corpus. Because the Court grants the petition on the Due Process ground and concludes that Respondents' revocation of Petitioner's parole violates procedural due process, Respondents are **ORDERED** to **immediately** release Petitioner from custody, subject to any conditions of his preexisting parole that existed at the time he was re-detained. The Parties are **ORDERED** to file a Joint Status Report by **March 24, 2026**, confirming that Petitioner has been released.

//

//

The Court **DENIES AS MOOT** the remainder of Petitioner's claims. The Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

Dated: March 19, 2026

Honorable James E. Simmons Jr.
United States District Judge

26-cv-1361-JES-DDL